# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION
# AT LONDON

**CRIMINAL CASE NO. 12-13-GFVT-CJS**
**CIVIL CASE NO. 16-209-GFVT-CJS**

**UNITED STATES OF AMERICA**                                      **PLAINTIFF**

**v.**                          **REPORT AND RECOMMENDATION**

**MABLE ASHLEY JENKINS**                                          **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \*

On September 15, 2016, Defendant Mable Ashley Jenkins, *pro se*, filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  (R. 75).[1] Jenkins subsequently filed a Memorandum in Support thereof.  (R. 79).[2]  The United States has filed its Response to the filings (R. 84), to which Jenkins has filed a Reply (R. 86).  Having all relevant documents before the Court, the matter is ripe for consideration and preparation of a Report and Recommendation.  For the reasons stated below, it will be **recommended** that Jenkins's § 2255 Motion be **denied**.

---

[1] Although the Clerk of Courts received and docketed Jenkins's pending § 2255 Motion on September 20, 2016, it is deemed filed on the date she deposited it in the correctional institution's internal mailing system.  *See* Rule 3(d) of the Rules Governing Section 2255 Proceedings in the United States District Courts. Here, the *pro se* Motion was signed on September 15, 2016.  (*See* R. 75, at 13).  Accordingly, applying the prisoner mailbox rule, the Court deems her § 2255 Motion to have been filed on September 15, 2016.  *See Houston v. Lack*, 487 U.S. 266, 273 (1988).

[2] Contemporaneously with the filing of her § 2255 Motion, Jenkins also filed a document titled "Abridge Motion to Vacate, Set Aside Criminal Conviction and Sentence Pursuant to 28 U.S.C. § 2255," wherein she requested permission to file an abridged Motion, and to be given additional time to fully brief her claim.  (R. 77).  The Court construed the Motion (R. 77) as a Motion for Leave to File a Memorandum in Support of her § 2255 Motion, which it granted, giving Jenkins 30 days to file a Memorandum in Support. (*See* R. 78).  Jenkins filed her Memorandum on October 17, 2016.  (R. 79).

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Jenkins's underlying conviction in this matter is based on her admission to the following

facts contained within her Plea Agreement:

> On the evening of April 4, 2011, the Defendant, David Jason Jenkins (Jason),
> Anthony Ray Jenkins (Anthony), and Alexis Leeann Jenkins (Alexis) were at a
> residence on Russell Drive in Harlan County, Kentucky.  Jason and Anthony began
> talking about finding somebody to fight. Jason suggested Kevin Pennington, who
> they all knew to be gay.  Jason made statements about "unfinished business" he had
> with Pennington.  Jason and Anthony referred to Pennington as a "faggot" during the
> discussion.  Jason and Anthony came up with a plan to go to Pennington's residence
> and have the Defendant and Alexis lure Pennington into Anthony's truck by telling
> Pennington they were going to get drugs.  They all knew Pennington would not get
> in the truck with Jason and Anthony if he knew they were in the truck because of a
> prior assault involving Pennington.  The Defendant and Alexis agreed with the plan
> to trick Pennington knowing the true purpose was to beat Pennington because
> Pennington was a "faggot."
>
> Jason and Anthony decided to take Anthony's truck because it was new and
> Pennington would not know that Anthony and Jason were in the truck.  Anthony
> agreed on the condition that the beating not take place in Anthony's new truck.  They
> all drove in Anthony's truck to Pennington's residence in Letcher County, Kentucky.
> The Defendant and Alexis went inside and asked Pennington to go with them to get
> drugs knowing the true purpose was for Jason and Anthony to beat Pennington
> because he was gay.
>
> Pennington asked the Defendant and Alexis who was in the truck with them and they
> falsely told him their "boyfriends." Based upon their false representations,
> Pennington agreed to go with them. Anthony was driving. Alexis and Jason were in
> the front passenger seat. The Defendant was seated in the rear seat of the truck.  The
> dome light did not come on when Pennington entered the rear passenger seat of the
> truck. This was done to hide the identities of Jason and Anthony. Further, both Jason
> and Anthony took actions to conceal themselves. Jason was wearing a hooded
> sweatshirt and had it pulled over his face and Anthony wore a jacket and a ball cap
> which he pulled down over his face at the time Pennington entered the truck. Jason
> and Anthony turned their faces away from Pennington when he entered the truck.
>
> Anthony initially drove to a parking lot by the old middle school.  When they left the
> middle school parking lot, they drove towards Kingdom Come Park.  Alexis
> accidently turned on the dome light at which time Pennington was able to see that it
> was Jason and Anthony in the front seat of the truck.  Pennington then asked them
> repeatedly to let him out of the truck or to take him home.  The rear door of this style

truck cannot be opened from the inside unless the front door is opened first. Therefore, Pennington could not escape. Contrary to Pennington's requests, Anthony drove along US Highway 119 to Kingdom Come State Park in Harlan County. During the drive, Jason made sexual threats to Pennington, including but not limited to, telling Pennington, "suck my dick, faggot." Jason also told Pennington, "I am going to fuck you in the ass dry until you bleed to death."

Pennington again asked to be let out of the truck. Anthony proceeded to drive several miles into Kingdom Come State Park which was extremely remote with no lighting. They came to a stop high up in the park because there was a tree down in the road. When Anthony stopped the truck, both Anthony and Jason exited the truck, and walked to the rear of the truck where Pennington was seated. Pennington unsuccessfully held onto the door to prevent Anthony and Jason from opening the door. When they opened the door, Pennington clung onto the Defendant in fear. Anthony began to hit Pennington while Pennington was still in the truck. Jason and Anthony pulled Pennington out of the truck and began hitting and kicking Pennington. During the beating, the Defendant, Alexis, Jason, and Anthony all called Pennington "faggot" and made other anti-homosexual comments. Anthony and Jason beat Pennington with their fists and feet. Either Jason or Anthony was wearing boots. Jason and Anthony continued to beat and kick Pennington even after he was on the ground begging them to stop. During the beating, Jason picked up a stick which was lying near Pennington. Jason and Anthony then returned to the truck. They were looking for a tire iron in the truck so they could kill Pennington. When Jason and Anthony went back to the truck, Pennington, who appeared to be almost unconscious, was able to get up and jump over the cliff. The Defendant, Jason, Anthony, and Alexis all got back in the truck. Jason told the Defendant and Alexis they were going back to Pennington's residence to finish the job. When they arrived there, Pennington was not home. Jason told the Defendant and Alexis to tell Pennington's sister that Pennington ripped them off to make it look like a drug deal gone bad. They were arrested after returning to their residence on Russell Drive.

The Defendant and Alexis aided and abetted Jason and Anthony in kidnapping Pennington and in taking Pennington to a secluded area to beat Pennington because of Pennington's sexual orientation. The role of the Defendant and Alexis was to trick Pennington into going with them by telling Pennington they were going to get drugs and by helping to hide the true identity of Jason and Anthony from Pennington. The Defendant and Alexis further aided and abetted Jason and Anthony by yelling "faggot" and other anti-homosexual comments repeatedly during the beating. Neither the Defendant nor Alexis tried to help Pennington or call the police. US Highway 119 is a channel, facility, and instrumentality of interstate commerce. Anthony's truck, which was used to lure Pennington and take him to Kingdom Come State Park to brutally assault him because of his sexual orientation, is an instrumentality of interstate commerce.

(R. 64, at 2-6, ¶ 4).

3

On March 14, 2012, Jenkins was charged in a criminal Complaint with aiding and abetting others to kidnap Kevin Pennington and hold him for the purpose of assault in violation of 18 U.S.C. § 1201(a)(1). (R. 1).  On April 10, 2012, Jenkins appeared with counsel, James Hibbard, for waiver of indictment and filing of an Information. (R. 17). In addition to the above charge, the Information also charged Jenkins with aiding and abetting others causing bodily injury to Pennington because of his actual and perceived sexual orientation in violation of 18 U.S.C. § 249(a)(2). (R. 16).  Jenkins pleaded guilty to the charges pursuant to a written Plea Agreement. (R. 17; R. 64; R. 40).

Following Jenkins's rearraignment and prior to her sentencing hearing, the Probation Office prepared the Presentence Investigation Report (PSR).  The PSR contains a summary of the facts of this case and provided the calculations under the Sentencing Guidelines.  As to Count 1, the calculations placed Jenkins at a base offense level of 32.  (PSR, at 7, ¶ 18).  Her offense level was increased by: 2 levels for serious bodily injury to the victim pursuant to U.S.S.G. § 2A4.1(b)(2); 2 levels for the use of dangerous weapons during the assault pursuant to U.S.S.G. § 2A4.1(b)(3); and 3 levels for intentionally selecting a victim based on a prohibited reason—the victim's sexual orientation—pursuant to U.S.S.G. § 3A1.1. (*Id.* at ¶¶ 19-21).  Thus, Jenkins's adjusted offense level for Count 1 was calculated to be a level 39.  (*Id.* at ¶ 24).

Regarding Count 2, the calculations placed Jenkins at a base offense level of 36.  (PSR, at 8, ¶ 25).  As with Count 1, her offense level was increased by 3 levels pursuant to U.S.S.G. § 3A1.1. (*Id.* at ¶ 27).  Accordingly, Jenkins's adjusted offense level for Count 2 was also calculated to be a level 39.  (*Id.* at 8, ¶ 30).  Because of the relationship between the offense conduct, Counts 1 and 2 were grouped together pursuant to U.S.S.G. § 3D1.2. (*Id.* at ¶ 31).  With the 3-point reduction for acceptance of responsibility, Defendant's resulting total offense level was 36.  (*Id.* at ¶¶ 33-34).

4

The PSR also contained an analysis of Jenkins's background, including her criminal history. (*Id*. at 8-10, ¶¶ 35-41). Jenkins's criminal history category was calculated to be a I. (*Id*. at 9, ¶ 37). Based on Jenkins's total offense level of 36 and criminal history category of I, the PSR contained a Sentencing Guidelines range of 188 to 235 months. (*Id.* at 13, ¶ 58).

Jenkins's counsel filed a Sentencing Memorandum on her behalf, but did not lodge objections to the PSR. (R. 57; R. 71). On June 19, 2013, Jenkins appeared with counsel for sentencing. (R. 71). At the sentencing hearing, the presiding District Judge granted the sealed Motion of the United States for a Sentencing Departure based on Defendant's substantial assistance in the investigation and prosecution of the criminal offenses committed in this case. (R. 62; R. 70, at 35). The Court's granting of that Motion reduced Jenkins's total offense level to 31. (R. 70, at 35). When considered in conjunction with Jenkins's criminal history category of I, the final Sentencing Guidelines range was 108 to 135 months. (*Id*.). The presiding District Judge sentenced Jenkins to 100 months of imprisonment, followed by a term of supervision of 3 years. (R. 72). Jenkins did not file a direct appeal.

Jenkins has now filed the pending § 2255 Motion, asserting one argument.[3] (R. 75; R. 79). Specifically, Jenkins asserts she is entitled to a sentence reduction under Amendment 794 to Sentencing Guideline § 3B1.2 for having a minor role. (R. 75, at 4-5, 7; R. 79). She requests a hearing "to show how 'minor' her role was." (R. 79, at 2).

## II.    ANALYSIS

---

[3] Although Jenkins presents her argument in her original § 2255 Motion as three separate grounds for relief, her sole argument in her Motion and Memorandum is that she is entitled to a sentence reduction under Amendment 794 to Sentencing Guideline § 3B1.2. (*See* R. 75; R. 79).

Under 28 U.S.C. § 2255(a), a federal prisoner may seek habeas relief on grounds that her conviction or sentence violated the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a). A § 2255 motion does not have to be founded on constitutional error or even federal law. *Watt v. United States*, 162 F. App'x 486, 502-03 (6th Cir. 2006). However, to succeed on a § 2255 motion alleging constitutional error, a defendant "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). To obtain relief under § 2255 for a nonconstitutional error, a defendant must establish either a fundamental defect in the criminal proceedings which inherently resulted in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process. *See Riggs v. United States*, 209 F.3d 828, 831 (6th Cir. 2000), *abrogated on other grounds as recognized by Kumar v. United States*, 163 F. App'x 361 (6th Cir. 2006); *see also Hicks v. United States*, 122 F. App'x 253, 256 (6th Cir. 2005); *McNeal v. United States*, 17 F. App'x 258, 260-61 (6th Cir. 2001).

In sum, a defendant's § 2255 motion must allege: (1) her conviction was the result of an error of constitutional magnitude; (2) her sentence was imposed outside of statutory limits; or (3) there was an error of law or fact so fundamental as to render the proceedings invalid. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). A preponderance of the evidence standard applies. *Pough*, 442 F.3d at 964.

### A. Jenkins's claim is barred by the statute of limitations.

Jenkins's claim is untimely.  A one-year statute of limitations applies to § 2255 motions.  28
U.S.C. § 2255(f). This period runs from the latest of: 1) the date on which the judgment of
conviction becomes final; 2) the date on which the impediment to making a motion created by
governmental action in violation of the Constitution or laws of the United States is removed, if the
movant was prevented from making a motion by such governmental action; 3) the date on which the
right asserted was initially recognized by the Supreme Court, if that right has been newly recognized
by the Supreme Court and made retroactively applicable to cases on collateral review; or 4) the date
on which the facts supporting the claim or claims presented could have been discovered through the
exercise of due diligence. 28 U.S.C. § 2255(f).  Here, Jenkins is challenging her sentence on the
underlying conviction.  Because she did not file a direct appeal of the presiding District Judge's
Judgment, her conviction became final for purposes of § 2255(f)(1) on July 17, 2013, when her time
to appeal expired.[4]  *See Sanchez-Castellano v. United States*, 358 F.3d 424, 426-27 (6th Cir. 2004)
(explaining an unappealed judgment of conviction becomes final when the time for filing a direct
appeal has expired); Fed. R. App. P. 4(b)(1)(A)(i) (a defendant's notice of appeal in a criminal case
must be filed within 14 days after entry of judgment). Thus, to be deemed timely under § 2255(f)(1),
Jenkins was required to file a § 2255 motion no later than July 17, 2014.  Jenkins placed the pending
Motion in her institution's mailing system on September 15, 2016–more than 2 years too late.

Jenkins asserts that her Motion is timely filed, stating §§ 2255(f)(3) and (4) apply to her
circumstance.[5]  (R. 75, at 12).  Specifically, in her Memorandum, Jenkins argues that she is entitled

---

[4] Jenkins was sentenced on June 19, 2013, and the Judgment was entered on July 3, 2013.  (R. 71;
R. 72).  Thus, she had until July 17, 2013, to file her appeal.  *See* Fed. R. App. P. 4(b)(1)(A)(i).

[5] In her Motion under the section entitled "Timeliness of Motion" Jenkins simply wrote "28 U.S.C.
§ 2255(4)" and "28 U.S.C. § 2255(3)."  The Court assumes Jenkins intended to cite to 28 U.S.C. §§
2255(f)(4) and (3).

to application of Amendment 794—despite her late filing—because it was not effective until November 2015, after she was sentenced, and has been declared retroactive on direct appeal by the Ninth Circuit in *United States v. Quintero-Leyva*, 823 F.3d 519 (9th Cir. 2016). (R. 79, at 3). Jenkins, however, does not cite any authority to support the proposition that either the enactment of Amendment 794 or a decision of a circuit court of appeals finding the Amendment retroactive on direct appeal are events that trigger the running of the statute of limitations under either 28 U.S.C. § 2255(f)(3) or (4). Nor has this Court's own research revealed such authority. Instead, another District Judge in this district has held to the contrary. *See United States v. Lee*, No. 6:13-cr-45-DCR, 2016 WL 6699139, at *1 (E.D. Ky. Nov. 14, 2016) (finding statute of limitations for § 2255 motions did not run anew from the date Amendment 794 became effective because circumstance did not fall within any of the categories set forth in § 2255(f)); *United States v. Swartz*, No. 5:14-cr-074-DCR, 2016 WL 6600495, at *3 (E.D. Ky. Nov. 7, 2016) (same); *see also United States v. Moorer*, No. 4:14-cr-426, 2016 WL 7012324, at *1 (N.D. Ohio Dec. 1, 2016) (same). As these authorities explain, Amendment 794 is not a circumstance that triggers the running of the statute of limitation for § 2255 claims seeking its application.

Further, while the Sixth Circuit has held the one-year limitation period is not jurisdictional and, therefore, is subject to equitable tolling, *see Dunlap v. United States*, 250 F.3d 1001, 1007 (6th Cir. 2001), *abrogated on other grounds by Hall v. Warden*, 662 F.3d 745 (6th Cir. 2011), Jenkins has not provided any argument that extraordinary circumstances exist here entitling her to equitable tolling. *See United States v. Trintidia*, No. CR-11-138-D, 2016 WL 4468263, at *2 (W.D. Okla. Aug. 24, 2016) (finding defendant did not demonstrate equitable tolling applied to excuse his untimely § 2255 motion seeking application of Amendment 794).

To the extent Jenkins may argue her one year should not begin until the effective date of the Amendment, as explained above, an amendment to the Sentencing Guidelines is not a circumstance triggering a later statute of limitations under § 2255(f). Further, Jenkins cites no authority, and this court has not found any, to support the proposition that changes or amendments to existing sentencing guidelines constitutes an extraordinary circumstance justifying equitable tolling of the statute of limitations. Thus, Jenkins has failed to meet her burden of demonstrating extraordinary circumstances exist so as to render equitable tolling applicable to excuse her untimely filing.

Finally, Jenkins has not asserted a claim of actual innocence, which is another avenue that may overcome the bar created by an untimely filing. *See McQuiggin v. Perkins*, __ U.S. ___, 133 S. Ct. 1924, 1928 (2013) (a claim of "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations"). The Supreme Court has cautioned that "tenable actual-innocence gateway pleas are rare: [A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

In her Motion and Memorandum, Jenkins does not contend she is factually innocent of the charges for which she was convicted. Moreover, Jenkins admitted she committed the offenses charged when she pleaded guilty. Thus, Jenkins cannot rely on actual innocence as a gateway through which her untimely § 2255 Motion may pass. Accordingly, finding Jenkins's claim to be untimely and not subject to either equitable tolling or the actual innocence exception, it will be recommended that Jenkins's § 2255 Motion be denied.

**B.      Jenkins's claim fails on the merits**.

9

Even if Jenkins's claim were not barred by the statute of limitations, it fails on the merits.[7]

"Because any error in the application of the Sentencing Guidelines is a nonconstitutional error, a

movant will only prevail on this type of claim if he is able to show that the alleged error amounts to

a 'complete miscarriage of justice.'" *Lee*, 2016 WL 6699139, at \*2 (denying defendant's argument

---

[7] Jenkins cites to *United States v. Quintero-Leyva*, 823 F.3d 519 (9th Cir. 2016) in support of her request for application of Amendment 794 via her § 2255 Motion. However, the Court in *Quintero-Leyva* held that Amendment 794 applies retroactively to cases on *direct appeal* to an appellate court. Thus, *Quintero-Leyva* does not support Jenkins's request. In fact, it is not necessary for Jenkins to point to *Quintero-Leyva* because the Sixth Circuit has also determined that Amendment 794 is a clarifying amendment that applies retroactively to cases on direct appeal. *United States v. Carter*, 662 F. App'x 342, 348-49 (6th Cir. 2016) (adopting the reasoning of *United States v. Quintero-Leyva*, 823 F.3d 519, 523 (9th Cir. 2016)).

Notwithstanding the foregoing, Jenkins can pursue application of Amendment 794 via a § 2255 motion. According to Sixth Circuit case law, a clarifying amendment to the Sentencing Guidelines can be applied retroactively in four possible situations: (1) the criminal case is before the District Court for original sentencing; (2) the case is pending on direct appeal from the judgment of conviction and sentence; (3) the clarifying amendment is made retroactive by the Sentencing Commission by being listed in U.S.S.G. § 1B1.10(c); or (4) a federal prisoner brings a motion for post-conviction relief under 28 U.S.C. § 2255. *See United States v. Geerken*, 506 F.3d 461, 464-66 (6th Cir. 2007) (finding it appropriate for a sentencing court to consider a clarifying amendment when calculating defendant's Guidelines sentencing range); *United States v. DeCarlo*, 434 F.3d 447, 458-59 (6th Cir. 2006) (finding it appropriate to consider a post-sentencing clarifying amendment when reviewing a defendant's sentence on appeal); *United States v. Williams*, 940 F.2d 176, 182 (6th Cir. 1991) (same); *Rivera v. Warden, FCI, Elkton*, 27 F. App'x 511, 514-15 (6th Cir. 2001) (finding clarifying amendments that are not listed in U.S.S.G. § 1B1.10(c)—and thus not retroactive for purposes of applying 28 U.S.C. § 3582(c)(2)—may be applied in a § 2255 proceeding); *United States v. McKibben*, 2003 WL 21960505, at \*2 (E.D. Tenn. Aug. 11, 2003) (same). The fourth situation, under which a clarifying amendment may be applied retroactively pursuant to a § 2255 motion, came from the Sixth Circuit's holding in *Rivera v. Warden, FCI, Elkton*.

In *Rivera*, petitioner filed a motion for post-conviction relief pursuant to 28 U.S.C. § 2241 seeking, among other things, a sentence reduction pursuant to the retroactive application of clarifying amendments to the Sentencing Guidelines. *Rivera*, 27 F. App'x at 512-17. The court held petitioner's arguments for a reduction of sentence were required to be brought to the sentencing court in a § 2255 motion to vacate, rather than in a habeas petition under § 2241. *Id.* In making its determination, the *Rivera* court reviewed the other methods of post-conviction relief available to petitioner, including a motion to reduce his sentence pursuant to § 3582(c)(2). Finding that petitioner was not entitled to relief under § 3582(c)(2) because the amendments were not specifically listed in U.S.S.G. § 1B1.10, the Sixth Circuit held "if an amendment clarifies a sentencing guideline, rather than substantively changes a guideline, a sentencing court can reduce the sentence by applying the amendment retroactively, even if it is not listed in U.S.S.G. 1B1.10[]. But again, in such a case the prisoner files a § 2255 motion with the sentencing court." *Id.* at 515. Thus, *Rivera* stands for the proposition that a defendant may request retroactive application of clarifying amendments to the Sentencing Guidelines via a motion under § 2255. However, as discussed above, Jenkins's claim, although properly raised in a § 2255 motion, lacks merit.

10

in his § 2255 motion that he was entitled to application of Amendment 794, finding he could not demonstrate a miscarriage of justice) (quoting *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999)).  As noted above, Jenkins has the burden of proving her contentions by a preponderance of the evidence.  *Pough*, 442 F.3d at 964.

Jenkins did not raise the issue of a minor-role reduction with the presiding District Judge at the time of her sentencing.  While Amendment 794 was not in effect at the time of Jenkins's sentencing, a minor-role reduction was available under Sentencing Guideline § 3B1.2. U.S. Sentencing Guidelines Manual (U.S.S.G.) § 3B1.2 (2011).  Thus, Jenkins could have argued for a role reduction at sentencing and/or on appeal under § 3B1.2, but she did not do so.  In fact, the Criminal Minutes from the Sentencing provide there were no objections to the PSR, which did not include a minor role reduction.  (R. 71).  Jenkins's failure to raise the issue at sentencing or on appeal prevents her from showing that a complete miscarriage of justice would result if Amendment 794 were not retroactively applied to her sentence.  *See cf. Burke v. United States*, 152 F.3d 1329, 1332 (11th Cir. 1998) (holding that the decision not to retroactively apply a clarifying amendment to a sentencing guideline that enhanced § 2255 movant's sentence was not a miscarriage of justice where movant failed to raise the impropriety of the application of the pre-amendment guideline enhancement at sentencing or on direct appeal).

Further, review of the record demonstrates that Jenkins does not qualify for a minor role reduction under § 3B1.2, even as amended by Amendment 794.  Section 3B1.2 of the Sentencing Guidelines allows a sentencing court to reduce a defendant's offense level "[b]ased on the defendant's role in the offense," providing for a reduction of 4 levels if a defendant was a minimal participant, a reduction of 2 levels if a minor participant, or a reduction of 3 levels if falling between

11

minimal and minor. U.S.S.G. § 3B1.2 (2017). Application Note 3(A), under the heading of "Applicability of Adjustment," explains that this section "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity." *Id.* App. Note 3(A). A reduction for a minimal participant "is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group." *Id.* App. Note 4. A reduction for a minor participant, "applies to a defendant . . . who is less culpable than most other participants, but whose role could not be described as minimal." *Id.* App. Note 5.

Amendment 794, effective November 1, 2015, amended the Commentary section of § 3B1.2, which includes the Application Notes. Among other things, the Amendment "provides additional guidance to sentencing courts in determining whether a mitigating role adjustment applies. Specifically, it addresses a circuit conflict and other case law that may be discouraging courts from applying the adjustment in otherwise appropriate circumstances." U.S.S.G. Supp. to App'x C, Amend. 794 (2015). According to the Commission, "there are differences among circuits about what determining the 'average participant' requires." *Id.* Specifically, the Seventh and Ninth Circuits viewed the "average participant" as including only the persons who participated in the criminal activity committed in the defendant's particular case and, therefore, determined defendant's relative culpability only by reference to his co-participants. *Id.* Other circuits, however, viewed the "average participant" as including persons outside of defendant's particular case who were participating in similar crimes. *Id.* The Amendment adopts the approach of the Seventh and Ninth Circuits by revising the Commentary to § 3B1.2 to specify that a defendant is to be compared with the other participants "in the criminal activity" when determining if a defendant had a mitigating role. *Id.* In

addition, the Amendment included a non-exhaustive list of factors a court "should consider" in determining whether a mitigating role adjustment applies and, if so, the extent of the adjustment. *Id.* Those factors are:

> (i)   the degree to which the defendant understood the scope and structure of the criminal activity;
> (ii)  the degree to which the defendant participated in planning or organizing the criminal activity;
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
> (iv)  the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
> (v)   the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2, App. Note 3(C).

Jenkins argues that she should receive a sentence reduction pursuant to § 3B1.2, as amended by Amendment 794, as she was a minor participant in the criminal activity and was not the "mastermind" behind the offenses. (R. 79, at 2). Jenkins alleges she "had no decision making authority" in the criminal activity and, had Amendment 794 been in effect when she was sentenced, she would have received a lower sentence for her minor role. (*Id.*). Jenkins cites to the list of factors above to support her contentions. Jenkins's argument is unavailing.

The presiding District Judge entered a Sentencing Memorandum Opinion detailing his reasoning behind the sentence he imposed upon Jenkins. Within that Opinion, the District Judge comments extensively on Jenkins's role in the criminal activity and how critical it was to the offenses being carried out. Specifically, the District Judge stated, "Ashley's role in the kidnapping and hate crime is substantial" and "[i]t is also true that Ashley's fists or feet did not inflict the injuries Pennington suffered, but it is accurate to say that the entire event would have been unlikely without her participation." (R. 70, at 36). The District Judge further referred to Jenkins as a "key

13

defendant in facilitating the assault and kidnapping" and concluded that Jenkins's "central role in these serious offenses merits a significant period of detention." (*Id*. at 38). In rendering these determinations, the District Judge detailed Jenkins's actions during the course of the criminal activity. In particular, the District Judge noted that it was Jenkins who lied to Pennington in order to trick him into getting into the truck, refused his pleas for help, and then encouraged the assault by jeering Pennington with homosexual slurs as he was beaten. (*Id*. at 36). The District Judge also noted that prior to the assault, Jenkins considered Pennington to be her best friend. (*Id*.).

The record in this matter demonstrates that Jenkins is not entitled to sentence reduction pursuant to § 3B1.2, as amended by Amendment 794. Although Jenkins claims she was not the "master mind" behind the assault and had no "decision making authority," Jenkins took crucial actions to facilitate the criminal activity, which likely would not have occurred but for her participation in the scheme. The nature of her actions—tricking Pennington, her friend, into getting into the truck knowing he was going to be assaulted; refusing to come to his aid; encouraging the beating—refute her position that she was a minor participant in the offenses charged. The fact that Jenkins did not physically inflict the injuries to Pennington does not change the result.

Moreover, even if Jenkins had requested and received a two-level decrease as a minor participant, the reduction would reduce her Sentencing Guidelines range to 87 to 108 months. The 100-month sentence Jenkins received falls within that range. Jenkins simply has not established that a miscarriage of justice occurred because she was already sentenced within the Sentencing Guidelines range that would have been applicable to her even had she been granted a two-level

14

reduction for being a minor participant. Accordingly, unable to demonstrate a "complete miscarriage of justice," her claim lacks merit.[8]

### C.    An Evidentiary Hearing is Unnecessary

Jenkins requests the Court hold an evidentiary hearing on her request for relief. (R. 79, at 2-3). However, an evidentiary hearing is not warranted where the record conclusively demonstrates the defendant is not entitled to relief. *See Ewing v. United States*, __ F. App'x __, 2016 WL 3182704, at *2 (6th Cir. June 7, 2016) (quoting 28 U.S.C. § 2255(b)). As explained above, no hearing is required on Jenkins's claim because the record conclusively demonstrates she is not entitled to relief.

---

[8] In her Reply brief, Jenkins raises additional arguments why she is entitled to the relief she seeks. Namely, Jenkins claims she is entitled to a sentence reduction because: 1) she has obtained her GED and attended classes while incarcerated; 2) she provided assistance to the United States through the investigation of this case; and 3) she received "papers" from the Clerk of Court stating her Guidelines range was actually 66-78 months. (R. 86). Generally, the raising of these arguments for the first time in a reply filing is improper and the newly-raised claims could be rejected on this basis. *See Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) (citing *Am. Trim, L.L.C. v. Oracle Corp*., 383 F.3d 462, 477 (6th Cir. 2004)); *see also United States v. McCorkle*, No. 1:07-cr-288, 2010 WL 2131907, at *7 (W.D. Mich. Mar. 30, 2010)(collecting cases); *Burns v. Lafler*, 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004).

In addition to being procedurally improper, Jenkin's claims in her Reply should be denied as meritless. First, while Jenkins's attempts to better herself through obtaining her GED and attending classes are commendable, such post-conviction efforts do not warrant a sentence reduction under § 2255. *See McCullough v. United States*, No. 12-1214, 2015 WL 1651270, at *5 (W.D. Tenn. Apr. 14, 2015). Second, while Jenkins provided assistance to the United States during the investigation and prosecution of these offenses, Jenkins has already received the benefit of that assistance through the Court's granting of the United States's Motion for a Sentencing Departure based on Defendant's substantial assistance. (R. 62; R. 70, at 35). Finally, as to Jenkins's claim she received "papers" indicating that her Sentencing Guidelines range was actually 66-78 months, this argument does not warrant § 2255 relief. Jenkins does not identify what "papers" she is referring to. Further, the Guidelines range was carefully calculated by Probation and included in Jenkins's PSR—to which Jenkins did not object. The presiding District Judge found the calculations in the PSR to be correct at sentencing. For the foregoing reasons, Jenkins is not entitled to the relief she seeks.

### III.    CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Federal Rules Governing Section 2255 Proceedings, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant.    A certificate may issue only if a defendant has made a substantial showing of the denial of a constitutional right.    28 U.S.C. § 2253(c)(2).    The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255).    In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."    *Id*.    "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."    *Id.*

In this case, reasonable jurists would not debate the denial of Defendant's § 2255 motion or conclude that the issues presented are adequate to deserve encouragement to proceed further.    *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).    Accordingly, it is recommended that a certificate of appealability be **denied** upon the District Court's entry of its final order in this matter.

16

## IV.    CONCLUSION AND RECOMMENDATIONS

Accordingly, for the reasons stated above, **IT IS RECOMMENDED** that:

(1)    Defendant Mable Ashley Jenkins's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (R. 75), including her request for an evidentiary hearing, be **denied**;

(2)    a Certificate of Appealability be denied by the District Judge in conjunction with the Court's entry of its final order in this matter;

(3)    Judgment in favor of the United States be entered contemporaneously with the District Court's entry of its final order; and,

(4)    this action be stricken from the active docket of the Court.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 950 (6th Cir. 1981).

Dated this 5th day of July, 2017.



**Signed By:**

**_Candace J. Smith_**

**United States Magistrate Judge**