UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA,       )<br>                                                          )<br>     Plaintiff,                               )<br>                                                          )<br>v.                                                      )<br>                                                          )<br>MABLE ASHLEY JENKINS,        )<br>                                                          )<br>     Defendant.                            )<br>                                                          ) | No. 6:12-CR-13-GFVT-HAI<br><br>RECOMMENDED DISPOSITION |

*** *** *** ***

On referral from District Judge Van Tatenhove (D.E. 93, 103), the Court considers reported violations of supervised release conditions by Defendant Mable Ashely Jenkins.

District Judge Van Tatenhove entered an amended judgment against Defendant in July 2013 following a guilty plea to aiding and abetting kidnapping (18 U.S.C. §§ 2 and 1201(a)(1)) and aiding and abetting willful bodily injury because of sexual orientation (18 U.S.C. §§ 2 and 249(a)(2)). D.E. 72; *see also* D.E. 70 (Sentencing Memorandum Opinion). According to the plea agreement, Defendant helped lure a man so he could be beaten up by two other men because he was perceived to be homosexual. D.E. 64 at 2-3. Defendant was sentenced to 100 months of imprisonment followed by three years of supervised release, which included several special conditions. D.E. 72. Defendant began her term of supervised release on September 16, 2019.

**I.**

On September 25, 2019, the United States Probation Office ("USPO") issued a Supervised Release Violation Report ("the First Report") that initiated these proceedings. The First Report charges two violations.

Violation #1 alleges a Grade C violation of the condition requiring Defendant to, among other things, refrain from using any controlled substance except as prescribed by a physician. According to the First Report:

> On September 18, 2019, the defendant submitted a urine sample that appeared to test positively for buprenorphine, via instant testing device. The defendant denied use of buprenorphine. The sample was forwarded to Alere Toxicology Services for testing and returned positive test results for norbuprenorphine, a buprenorphine metabolite, on September 23, 2019. On September 24, 2019, the defendant was contacted and informed of the positive test result and denied use of buprenorphine.

In relation to Defendant's buprenorphine use, Violation #2 of the First Report charges Defendant with violating the condition that she not commit another federal, state, or local crime. Noting the Sixth Circuit's decision that use of a controlled substance includes possession, Violation #2 charges Defendant with conduct that would be a violation of 21 U.S.C. § 844(a), simple possession of a controlled substance, a Class A misdemeanor. This is also a Grade C violation.

Defendant was arrested and, on October 16, 2019, the Court conducted an initial appearance on the First Report pursuant to Rule 32.1. D.E. 95. At the initial appearance, the United States made an oral motion for interim detention, and Defendant argued for release. *Id*. The Court found detention was appropriate because Defendant did not carry the heavy release burden imposed under Rule 32.1(a)(6) and 18 U.S.C. § 3143(a). *Id*.

A final hearing was set for October 21. D.E. 95. However, on October 21, the USPO issued an Addendum to the First Report. The Addendum charges, in Violation #3, a Grade C violation of the condition that forbids Defendant from associating with any person convicted of a felony without the probation officer's permission. According to the Addendum:

On September 17, 2019, the defendant married Freddie Minton in Clay County, Kentucky. Mr. Minton is serving a term of supervised release in case #6:13-CR-47-GFVT-17 and is a convicted felon. The defendant had not received permission from the probation office to have contact with Mr. Minton. On October 21, 2019, this officer received the marriage certificate from the Clay County, Kentucky, Clerk's Office.

The October 21 final hearing was converted to an initial appearance on the Addendum. D.E. 96. A final hearing was set for October 24. D.E. 97.

At the October 24 final hearing, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 98. The parties presented an unusual recommendation. First, the parties announced that the government intended to move to dismiss Violations #1 and #2, and Defendant intended to admit to Violation #3. D.E. 98. The parties asked that Defendant be allowed to go immediately into inpatient drug treatment. *Id*. The Court granted the request and ordered that Defendant "[e]nroll [in] and successfully complete an inpatient drug treatment at the USPO's choosing and direction." *Id*. Defendant was instructed that a failure to follow any program rule could lead to a new violation. D.E. 99.

Defendant entered inpatient substance abuse treatment at Chrysalis House in Lexington on November 13, 2019. Unfortunately, she did not complete the program.

On November 27, 2019, the USPO issued another Supervised Release Violation Report ("the Second Report") in this matter. The Second Report charges a single Grade C violation of the condition that requires Defendant to follow the instructions of the probation officer. In the Second Report, the probation officer notes that he instructed Defendant to "complete the inpatient substance abuse program and to follow all rules and regulations of the program." Violation #1 alleges that Chrysalis House staff notified the probation officer on November 27

3

"the defendant was being unsuccessfully discharged on this date" for "violating the rules of the facility."

On December 2, 2019, the Court conducted an initial appearance on the Second Report pursuant to Rule 32.1. D.E. 102. The United States made an oral motion for interim detention, and Defendant did not argue for release. *Id*. The Court found detention was appropriate because Defendant did not carry the heavy release burden imposed under Rule 32.1(a)(6) and 18 U.S.C. § 3143(a). *Id*.

The Court conducted a final hearing on all four alleged violations (#1 and #2 from the First Report, #3 from the Addendum, and #1 from the Second Report) on December 6, 2019. D.E. 104. Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. *Id*. At this point, the government no longer intended to move to dismiss any charges. Instead, Defendant competently entered a knowing, voluntary, and intelligent stipulation to all four violations. *Id*. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for the violations as described in the First Report, Addendum, and Second Report. *Id*. She admitted using a controlled substance in September, marrying Freddie Minton without permission, and violating the rules of Chrysalis House. The United States thus established Violations #1, #2, #3, and #1 of the Second Report under the standard of section 3583(e). The parties then argued for different penalties, as discussed below.

## II.

The Court has evaluated the entire record, including the First Report, Addendum, Second Report, their accompanying documents, and documents related to the underlying conviction. Additionally, the Court has considered all the 18 U.S.C. § 3583 factors imported into the 18 U.S.C. § 3583(e) analysis. Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a

supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's convictions are both Class A felonies. *See* 18 U.S.C. §§ 1201(a)(1), 249(a)(2). For a Class A felony, the maximum revocation sentence provided under 18 U.S.C. § 3583 is five years (60 months) of imprisonment. *See* 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under U.S.S.G. § 7B1.1, Defendant's admitted conduct related to all four Violations are Grade C violations. Given Defendant's criminal history category of I (the category at the time of Defendant's underlying conviction) and Grade C violations, Defendant's range, under the Revocation Table of Chapter 7, is three to nine months. *See* U.S.S.G. § 7B1.2(b).

A Court may also re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's original conviction carries a maximum term of supervised release of five years, minus any term of imprisonment imposed upon revocation. 18 U.S.C. § 3583(b).

## III.

At the final hearing, the government requested a revocation penalty in the mid- to high-Guidelines range, followed by a "significant" term of supervision. The government stressed that Defendant's violent underlying offense was very serious. Now, Defendant is using drugs again and failing to follow "the most basic rules" of supervised release. This is a serious breach of the Court's trust and poses a danger to society. The government argued that Defendant has

5

made little progress toward becoming able to conform to the most basic norms of society.

Yet the government also noted Defendant's very troubled childhood and her history of depression and substance abuse. Counsel for the government stated she would have asked for an above-Guidelines sentence if not for Defendant's difficult history.

The government also noted that, although she was incarcerated for eight years, Defendant never obtained her GED, although the PSR notes in paragraph 53 that she had passed three of the five required tests in 2012. One special condition of release states, "Should the defendant not complete her GED while in the custody of the Bureau of Prisons, she is to continue in such a program, as directed by the probation office, as a condition of supervision." The government presented this fact as further evidence of Defendant's lack of initiative.

The defense argued that Defendant remained mentally a teenager. She is still "operating as a 15-year old." Defendant became a drug user as a teenager and has been depressed and otherwise mentally unstable. She went to prison at age 20. The defense argued that addiction had "stunted her brain," which made it difficult for her to resist pressure from others. Defendant was a follower in the underlying crime. The defense also pointed out that she violated the Chrysalis House rules when another patient offered her a vape. After she smoked it, he laughed and said he hoped she got revoked. Defendant also had a cellphone in the facility (in violation of the rules) and wrote a "silly letter." All this demonstrates she is still a functional teenager at age 27. The defense thus argued that Defendant is not really a danger to the community, and that more prison time will not deter her from making bad choices. The defense requested, "Give her no more than three months."

When Defendant was asked if she wished to address the Court, she said she had "nothing to say."

## IV.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the section 3583(e) analysis, as well as the Guidelines Range. Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because she possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). Subsection 3583(d) provides an alternative to revocation and imprisonment when a drug treatment program is appropriate. *See Crace*, 207 F.3d at 835. Neither side argued for treatment as an alternative to incarceration.

The Court first considers the nature and circumstances of Defendant's conviction. Defendant participated in a violent crime—a group of friends targeted an acquaintance for a brutal beating and potential murder on account of his sexual orientation. For this behavior, Defendant received a sentence of 100 months' imprisonment. This was a sizable downward departure from Defendant's Guidelines Range of 188 to 235 months. Prior leniency like this can provide a basis for an upward departure. USSG § 7B1.4, note 4. Remarkably, this sentence appears to have failed to change the course of Defendant's life or improve her behavior in any way.

The Court next considers Defendant's history and characteristics and the need to deter criminal conduct and protect the public. Defendant was nineteen years old when sentenced and had already wrestled with addiction for years. Defendant's drug use stemmed from the horrific loss of her mother, but drugs ended up taking the reins of her life. And Defendant can easily become violent when on drugs. She is likely to find herself in deep trouble again if she does not get clean.

Another factor is the need for additional training or treatment. In October, the parties and the Probation Office arranged for Defendant to undergo inpatient treatment while this matter was pending. But Defendant did not abide by the rules and was ejected from treatment. So this factor does not significantly impact the Court's calculus. Additional outpatient treatment is clearly needed.

The Guidelines suggest the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Here, Defendant committed multiple violations and did so swiftly. As the defense acknowledged, she "screwed up on day two" after her release from prison, "got married on day 30, and kicked out of rehab on day 60."

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence.

The undersigned recommends a within-Guidelines sentence of seven months of incarceration. This should be followed by the maximum available supervised release, which is 53 months. The incarceration sentence is intended as another attempt to get Defendant's attention. The supervision is intended to protect society in case she continues to show herself incapable of complying with basic rules. The Court hopes this will not be so difficult for her in the future.

The government requested a period of home detention and electronic monitoring after Defendant's release. A new condition to this effect is not necessary because the Probation Office is well-aware that Defendant needs intense, close supervision.

## V. Conclusion

Based on the foregoing, the Court **RECOMMENDS:**

(1)  Based on her stipulations, that Defendant be found guilty of all four Violations (#1 and #2 from the First Report, #3 from the Addendum, and #1 from the Second Report).

(2)  Revocation with a sentence of seven months, followed by a new 53-month term of supervised release under the conditions previously imposed.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i).  As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission.  If Defendant chooses to waive allocution, she **SHALL** do so on or before the deadline for filing objections.

This the 9th day of December, 2019.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge