UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MABLE ASHLEY JENKINS, ) <br> ) <br> Defendant. ) <br> ) | No. 6:12-CR-13-GFVT-HAI <br><br> RECOMMENDED DISPOSITION |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

On referral from District Judge Van Tatenhove (D.E. 111), the Court considers reported violations of supervised release conditions by Defendant Mable Ashley Jenkins. This is her second revocation.

**I.**

District Judge Van Tatenhove entered an amended judgment against Defendant in July 2013 following a guilty plea to aiding and abetting kidnapping (18 U.S.C. §§ 2 and 1201(a)(1)) and aiding and abetting willful bodily injury because of sexual orientation (18 U.S.C. §§ 2 and 249(a)(2)). D.E. 72; *see also* D.E. 70 (Sentencing Memorandum Opinion). According to the plea agreement, Defendant helped lure a man so he could be beaten up by two other men because he was perceived to be homosexual. D.E. 64 at 2-3. Defendant was sentenced to 100 months of imprisonment followed by three years of supervised release, which included several special conditions. D.E. 72. Defendant began her first term of supervised release on September 16, 2019.

In September 2019, the United States Probation Office ("USPO") sought revocation on the basis of two violations. First, on September 18, 2019 (two days after her release), Defendant

submitted a urine sample that appeared to test positively for buprenorphine (Suboxone) via instant testing device. She denied use of buprenorphine. After the sample returned positive test results for a buprenorphine metabolite, Defendant again denied use of buprenorphine. The second violation consisted of criminal conduct, namely that Defendant's use of buprenorphine included illegal possession of a controlled substance.

The USPO issued an addendum the following month, which charged a third violation. According to the addendum, on September 17, 2019, Defendant married Freddie Minton, a convicted felon who was on federal supervised release. This violated the condition that forbids Defendant from associating with any person convicted of a felony without the probation officer's permission.

At the final hearing on the three violations in the report and addendum, the parties announced a jointly recommended resolution: that the government intended to dismiss the first two violations, Defendant intended to admit the third violation (associating with a felon), and Defendant should be allowed to go immediately into inpatient drug treatment. The Court granted the request and ordered that Defendant "[e]nroll [in] and successfully complete an inpatient drug treatment at the USPO's choosing and direction." The final hearing was continued, to be reset following completion of the drug treatment program. D.E. 98. Defendant then entered inpatient treatment, but she did not complete the program.

In November 2019, the USPO issued a second report which charged a fourth violation, namely that Defendant had been discharged from the inpatient treatment program for failure to follow the rules. Defendant ultimately admitted all four violations. D.E. 105. She was sentenced to seven months of incarceration plus 53 months of supervised release. D.E. 109. Defendant was released again on May 28, 2020.

## II.

On April 12, 2021, the USPO issued the Supervised Release Violation Report (the "Report") that initiated these proceedings. The Report charges three violations.

Violation #1 alleges a Grade C violation of the condition requiring Defendant to, among other things, refrain from any "unlawful use of a controlled substance." According to the Report:

> On April 7, 2021, the defendant submitted a urine specimen which appeared to test positively for marijuana and methamphetamine, via instant testing device. The defendant denied use of either substance. The specimen was sent to Abbott for confirmation.
>
> On April 11 and 12, 2021, Drug Test Reports were received from Abbott, confirming positive test results for marijuana metabolite and methamphetamine.

Based on Defendant's use of *marijuana*, Violation #2 charges Defendant with violating the conditions that she not commit another federal, state, or local crime and that she not unlawfully possess a controlled substance. Noting the Sixth Circuit's decision that use of a controlled substance includes possession, Violation #2 charges Defendant with conduct that would be a violation of K.R.S. § 218A.1422, a Class B misdemeanor. This is also a Grade C violation.

Based on Defendant's use of *methamphetamine*, Violation #3 also charges Defendant with violating the conditions that she not commit another federal, state, or local crime and that she not unlawfully possess a controlled substance. Noting the Sixth Circuit's decision that use of a controlled substance includes possession, Violation #3 charges Defendant with conduct that would be a violation of K.R.S. § 218A.1415, a Class D felony. Violation #3 is a Grade B violation.

What happened next is detailed in an Addendum to the Report that the USPO issued on April 27, 2021. According to the Addendum,

> On April 19, 2021, the defendant was arrested by the U.S. Marshals Service due to an arrest warrant issued in this case. Upon the U.S. Marshals Service making contact with Jenkins, she fled in a vehicle. Jenkins' husband, Freddie Minton, was a passenger in the vehicle. The U.S. Marshals Service then pursued the vehicle with emergency lights and sirens activated. The pursuit became too dangerous and was terminated. The U.S. Marshals Service continued to follow the vehicle without emergency lights and sirens activated. A short time later the vehicle was located after a crash occurred. The defendant and her husband were apprehended while attempting to flee the scene of the accident. This conduct is a violation of K.R.S § 520.095-Fleeing or Evading Police-First Degree, a Class D felony.

The Addendum charges in Violation #4 a Grade B violation of the condition that Defendant not commit another federal, state, or local crime.

Defendant's initial appearance was delayed so she could receive a medical evaluation following the vehicle crash described above. D.E. 113. On April 22, 2021, the Court conducted an initial appearance on the Report pursuant to Rule 32.1. D.E. 116. At the initial appearance, the United States made an oral motion for interim detention, Defendant did not argue for release. *Id*. The Court found detention was appropriate because Defendant did not carry the heavy release burden imposed under Rule 32.1(a)(6) and 18 U.S.C. § 3143(a). *Id*. A final hearing was set for April 29. *Id*. However, on April 27, the USPO issued the Addendum, so the April 29 hearing was converted to an initial appearance on Violation #4. D.E. 118.

The Court conducted a final hearing on all four alleged violations from the Report and Addendum on May 21, 2021. D.E. 121. Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. *Id*. The defense announced that Defendant would enter a full stipulation to the first three violations. For Violation #4, she wanted to enter something akin to an *Alford* plea. Defendant was ready to admit that the government would be able to prove the fleeing and

4

evading charge *by a preponderance of the evidence* at a hearing. But she did not want to fully admit to the conduct because of the remote possibility that state fleeing and evading charges could be brought in the future. Thus, Defendant competently entered a knowing, voluntary, and intelligent stipulation to the violations. *Id*. She admitted that she had used and possessed marijuana and methamphetamine, as charged in Violations #1, #2, and #3. She also stipulated that the government would be able to prove Violation #4 by a preponderance of the evidence. The United States thus established Violations #1, #2, #3, and #4 under the standard of section 3583(e). The parties then argued for different penalties, as discussed below.

### III.

The Court has evaluated the entire record, including the Report and Addendum, their accompanying documents, and documents related to the underlying conviction. Additionally, the Court has considered all the 18 U.S.C. § 3583 factors imported into the 18 U.S.C. § 3583(e) analysis. Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's convictions are both Class A felonies. *See* 18 U.S.C. §§ 1201(a)(1), 249(a)(2). For a Class A felony, the maximum revocation sentence provided under 18 U.S.C. § 3583 is five years (60 months) of imprisonment. *See* 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under U.S.S.G. § 7B1.1, Defendant's admitted conduct related to all four Violations are Grade C violations. Given Defendant's criminal history category of I (the

5

category at the time of Defendant's underlying conviction) and Grade B violations,[1] Defendant's range, under the Revocation Table of Chapter 7, is four to ten months. *See* U.S.S.G. § 7B1.2(b).

A Court may also re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's original conviction carries a maximum term of supervised release of five years, minus any term of imprisonment imposed upon revocation. 18 U.S.C. § 3583(b). Defendant was previously revoked for seven months, so 53 months remains, minus any imprisonment imposed upon this revocation.

## IV.

At the final hearing, the government requested an above-Guidelines revocation penalty of twelve months, followed by two years of supervised release. The defense requested ten months of imprisonment, followed by two years of supervised release. The Court believes a longer supervision period is warranted to protect the public and recommends revocation with twelve months of incarceration, followed by the maximum available supervision period—41 months.

According to the government, Defendant has been receiving outpatient drug abuse treatment and mental health counseling while on supervision. Yet now she has returned to drug use, and her drug use has escalated from opioids to methamphetamine. According to the government, any meth use puts Defendant in contact with people in drug trafficking. Her attempts to avoid capture by fleeing in a vehicle (she was the driver) also seriously endangered the public. These were severe breaches of the Court's trust that warrant an above-Guidelines

---

[1] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

sentence. Additionally, Defendant's lenient original sentence (88 months below the Guidelines Range) supports an above-Guidelines sentence.

The government acknowledged that Defendant needs more treatment for drug abuse and mental health. And Defendant has a childhood history of trauma and exposure to drugs.

The defense essentially agreed with the government's arguments. According to the defense, Defendant has been "behind the 8-ball" since childhood. As the defense also stated during the prior revocation proceedings, communicating with Defendant feels like talking to a child. She continues to make "juvenile" and "idiotic" decisions. According to the defense, Defendant does not want inpatient treatment, so it was not requested. Defendant says she has a job waiting for her in Tennessee, and she has a three-month old child.

Defendant briefly addressed the Court. She said she had a job waiting for her at a factory in Kingsport Tennessee. If this remains true, then upon her release, Defendant can consult with her probation officer about leaving the District.

**V.**

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the section 3583(e) analysis, as well as the Guidelines Range. Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because she possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). Subsection 3583(d) provides an alternative to revocation and imprisonment when a drug treatment program is appropriate. *See Crace*, 207 F.3d at 835. Neither side argued for treatment as an alternative to incarceration.

7

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

The Court first considers the nature and circumstances of Defendant's conviction. Defendant participated in a violent crime—a group of friends targeted an acquaintance for a brutal beating and potential murder on account of his sexual orientation. For this behavior, Defendant received a sentence of 100 months' imprisonment. This was a sizable downward departure from Defendant's Guidelines Range of 188 to 235 months. Prior leniency like this can provide a basis for an upward departure. USSG § 7B1.4, note 4.

The Court next considers Defendant's history and characteristics and the need to deter criminal conduct and protect the public. Defendant was nineteen years old when sentenced and had already wrestled with addiction for years. Defendant's drug use stemmed from the horrific loss of her mother, but drugs ended up taking the reins of her life. And Defendant can easily become violent when on drugs. She has again demonstrated this propensity to hurt herself and others when she fled from the Marshals and crashed her car. Defendant must get clean or she will spend the rest of her life in prison. Defendant's lenient underlying sentence and her prior revocation have failed to change the course of her life or improve her behavior in any way. This Court thoroughly warned Defendant at the prior revocation proceedings that it was crucial she avoid drugs and learn to respect authority. The Court is sympathetic to the terrible experiences of Defendant's past, but at some point she has to become honest with herself and others and take responsibility for her behavior. Hopefully the presence of her child will provide increased motivation for Defendant to begin behaving as an adult.

Another factor is the need for additional training or treatment. During the 2019 revocation proceedings, the parties and the Probation Office arranged for Defendant to undergo inpatient treatment. But Defendant did not abide by the rules and was ejected from treatment. Although additional outpatient treatment is clearly needed, inpatient treatment is not currently an appropriate option, and neither side requested it.

The Guidelines suggest the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Here, Defendant did exactly what this Court warned her against doing in 2019. She returned to drug use, even escalating to a harder drug. And she continued to disrespect authority by evading arrest. Even worse, she endangered the public and herself by fleeing in a vehicle.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. Here, the Court recommends an incarceration sentence of twelve months. This is above the Guidelines Range of four to ten months. When varying from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

An above-Guidelines sentence is warranted here. This is Defendant's second revocation for multiple violations of her supervision conditions. The current violations include felony drug possession and felony fleeing and evading arrest. The need to protect the public, deter further dangerous activity, and address the breach of the Court's trust are great. Defendant must be given a clear message that she has to get her life under control or she will hurt herself and others. In particular, by fleeing from the Marshals by vehicle, she put lives at risk.

This same need to protect the public supports imposition of the maximum available supervision upon release. Hopefully, Defendant will do better availing herself of the assistance provided by the Probation Office and her treatment providers, for the sake of her family if nothing else.

### VI. Conclusion

Based on the foregoing, the Court **RECOMMENDS:**

(1) Based on her stipulations to Violations #1, #2, and #3 and concession as to Violation #4, that Defendant be found guilty of all four Violations.

(2) Revocation with a sentence of twelve months, followed by a new 41-month term of supervised release under the conditions previously imposed.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the

District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission. If Defendant chooses to waive allocution, she **SHALL** do so on or before the deadline for filing objections.

This the 24th day of May, 2021.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge