UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:12-CR-13-GFVT-HAI |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| MABLE ASHLEY JENKINS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

On referral from District Judge Van Tatenhove (D.E. 127), the Court considers reported violations of supervised release conditions by Defendant Mable Ashley Jenkins Minton. This is her third revocation.

**I.**

District Judge Van Tatenhove entered an amended judgment against Defendant in July 2013 following a guilty plea to aiding and abetting kidnapping (18 U.S.C. §§ 2 and 1201(a)(1)) and aiding and abetting willful bodily injury because of sexual orientation (18 U.S.C. §§ 2 and 249(a)(2)). D.E. 72; *see also* D.E. 70 (Sentencing Memorandum Opinion). According to the plea agreement, Defendant helped lure a man so he could be beaten up by two other men because he was perceived to be homosexual. D.E. 64 at 2-3. Defendant was sentenced to 100 months of imprisonment followed by three years of supervised release, which included several special conditions. D.E. 72. Defendant began her first term of supervised release on September 16, 2019.

In September 2019, the United States Probation Office ("USPO") sought revocation on the basis of two violations. The USPO reported that, on September 18, 2019 (two days after her

release), Defendant submitted a urine sample that appeared to test positively for buprenorphine (Suboxone) via instant testing device. She denied use of buprenorphine. After the sample returned positive test results for a buprenorphine metabolite, Defendant again denied use of buprenorphine. Defendant was charged with violating the condition prohibiting controlled-substance use without a prescription and the condition prohibiting commission of a crime, here the Class-A misdemeanor of simple controlled-substance possession.

The USPO issued an addendum the following month, which charged a third violation. According to the addendum, on September 17, 2019, Defendant married Freddie Minton, a convicted felon who was on federal supervised release. This violated the condition that forbids Defendant from associating with any person convicted of a felony without the probation officer's permission.

At the final hearing on the three violations in the report and addendum, the parties announced a jointly recommended resolution: that the government intended to dismiss the first two violations, Defendant intended to admit the third violation (associating with a felon), and Defendant should be allowed to go immediately into inpatient drug treatment. The Court granted the request and ordered that Defendant "[e]nroll [in] and successfully complete an inpatient drug treatment at the USPO's choosing and direction." The final hearing was continued, to be reset following completion of the drug treatment program. D.E. 98. Defendant then entered inpatient treatment, but she did not complete the program.

In November 2019, the USPO issued a second report which charged a fourth violation, namely that Defendant had been discharged from the inpatient treatment program for failure to follow the rules. Defendant ultimately admitted all four violations. D.E. 105. She was

sentenced to seven months of incarceration plus 53 months of supervised release. D.E. 109. Defendant was released again on May 28, 2020.

On April 12, 2021, the USPO issued a report charging three violations. Defendant had submitted a urine specimen on April 7 that tested positive for marijuana and methamphetamine. Defendant denied use of either substance. But lab testing confirmed the presence of both. Defendant was charged with unlawful use of a controlled substance, committing the crime of marijuana possession, and committing the crime of methamphetamine possession. *See* D.E. 122.

In an April 27 addendum, the USPO reported that, when the Marshals attempted to arrest Defendant, she fled in her vehicle (with her husband Freddie Minton in the passenger seat). Defendant crashed and was apprehended. The addendum charged Defendant with committing a crime—first-class fleeing or evading police. *See* D.E. 122.

Defendant stipulated to the first three violations, but entered an *Alford* plea to the fleeing-and-evading charge. *See* D.E. 122. Her release was revoked with an imprisonment sentence of twelve months, followed by a new 41-month term of supervised release. D.E. 124, 125. Defendant was released again on April 18, 2022.

**II.**

On May 23, 2022, the USPO issued the Supervised Release Violation Report (the "Report") that initiated these proceedings. The Report charges two violations.

Violation #1 alleges a Grade C violation of the condition prohibiting commission of another federal, state, or local crime. According to the Report,

> On May 22, 2022, the defendant was arrested by the Harlan, Kentucky, Police Department and charged with the following: No Registration Plates-K.R.S. § 186.170, a violation; No Registration Receipt-K.R.S. § 186.170, a violation; Operating a Motor Vehicle Under the Influence of a Substance-1st Offense-K.R.S. § 189A.010, a Class B misdemeanor; Failure to Produce Insurance Card-

K.R.S. § 304.39-117, a violation; and License To Be In Possession-K.R.S. § 186.510, a Class B misdemeanor.

The Report was accompanied by Defendant's arrest citation and the citation for Freddie Minton, who again was a passenger in Defendant's vehicle at the time of her arrest. The narrative on Defendant's citation is as follows:

> [Shortly after midnight on May 22,] the above subject was seen driving on South Cumberland [Avenue] in a red passenger car with no plates on the back. [After being stopped, Defendant] advised that she did not know that it didn't have plates and that she just bought the car in Kingsport, TN. [Defendant] stated that she did not know where her drivers license was. [Defendant] was acting very fidgety and was very anxious[. While we were] speaking she had glossy and huge pupils.
>
> I then asked [Defendant] to step out of the vehicle to do standard field sobriety. Once performing [the horizontal gaze nystagmus test, Defendant] was stumbling and almost losing her balance while just standing on the roadway. She could not follow my Stimulus which was my finger with her eyes. Her eyes were jumping everywhere and slow to react with my finger. Also I asked [Defendant] to perform walk and turn test which she could not because she had a hurt right ankle.
>
> [Defendant] then stated that what she took last was a smoke of a THC pin about an hour prior to pulling her over.

Before being jailed, Defendant was taken to the local hospital and consented to a blood test.

Mr. Minton's citation states that when he got out of the car, a meth pipe fell out of the pocket of his shorts. Police then searched the car, where they found methamphetamine and marijuana "in the back seat floor in between two juveniles." Mr. Minton was charged with first-degree meth possession, marijuana possession, and drug paraphernalia possession.

Violation #2 charges a Grade C violation of the condition that Defendant "must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer." Defendant's conditions limit her travel to within the Eastern District of Tennessee. But she was arrested in Harlan, Kentucky.

On June 10, 2022, Magistrate Judge Atkins conducted an initial appearance on the Report pursuant to Rule 32.1. D.E. 131. Defendant competently, knowingly, voluntarily and intelligently waived her right to a preliminary hearing. The government made an oral motion for interim detention, Defendant did not argue for release. *Id*. The Court found detention was appropriate because Defendant did not carry the heavy release burden imposed under Rule 32.1(a)(6) and 18 U.S.C. § 3143(a). *Id*.

The Court conducted a final hearing on June 21, 2022. D.E. 133. Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. *Id*. Defendant competently entered a knowing, voluntary, and intelligent stipulation to both violations. *Id*. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for each violation as described in the Report. The United States thus established both violations under the standard of section 3583(e).

### III.

The Court has evaluated the entire record, including the Report and accompanying documents, materials from the prior revocations, and documents related to the underlying conviction. Additionally, the Court has considered all the 18 U.S.C. § 3583 factors imported into the 18 U.S.C. § 3583(e) analysis.

Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's convictions are both Class A felonies. *See* 18 U.S.C. §§ 1201(a)(1), 249(a)(2). For a Class A felony, the maximum revocation sentence provided under 18 U.S.C. § 3583 is five years (60 months) of imprisonment. *See* 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under U.S.S.G. § 7B1.1, Defendant's admitted conduct related to all four Violations are Grade C violations. Given Defendant's criminal history category of I (the category at the time of Defendant's underlying conviction) and Grade C violations, Defendant's range, under the Revocation Table of Chapter 7, is three to nine months. *See* U.S.S.G. § 7B1.2(b).

A Court may also re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's original conviction carries a maximum term of supervised release of five years, minus any term of imprisonment imposed upon revocation. 18 U.S.C. § 3583(b). Defendant was previously revoked for seven months and twelve months, so 41 months remains, minus any imprisonment imposed upon this revocation.

## IV.

At the final hearing, the government requested an above-Guidelines revocation penalty of 18 months with no supervision to follow. The defense requested twelve months with no supervision to follow. The Court recommends revocation with 14 months of imprisonment, with no additional supervision.

The defense agreed with the government's argument for no further supervision. According to the government, Defendant does not pose much of a risk of reoffending similarly to the underlying conviction. Defendant's conviction is for Class A kidnapping, among the most serious federal crimes. Defendant had an active role. But she would not have been

6

involved but for the involvement of other people. At the time, she was 19 years old, with little or no criminal history. That Defendant was going along with others, rather than leading in the kidnapping, lessens the need to protect society from Defendant repeating such behavior. Though Defendant poses a danger of drug use, she does not particularly pose a danger of kidnapping-type violence.

Instead, Defendant's issues include drug addiction. The Court and Probation have tried to help her, but she consistently returns to drug use shortly after release. At this point, there is little reason to think that additional rehab will be effective.

Defendant's issues also include a lack of commitment to her terms of supervision. Supervision is only effective if the defendant cooperates with the probation officer. Defendant does not seem capable of doing this. That her violations include leaving her District of residence suggests she cannot be effectively supervised. The Probation Office's resources can be better used with somebody who wants to make a change.

The government noted that the underlying conviction is not a drug case. Drugs were involved, but the kidnapping was not like the typical drug dispute. Given that this is not a drug case, Defendant is not subject to indefinite supervision. She will run out of supervised-release time. The parties' recommendation of no further supervision simply accelerates the process of Defendant getting off paper, given that she seems unable to comply anyway.

As for the government's suggested revocation sentence, the government argued that something well above the Guidelines Range is warranted on a third revocation. Defendant's original sentence was lesser than her co-defendants', but she has not rewarded the trust the Court has placed in her or the efforts to rehabilitate her drug addiction. That she has again committed criminal conduct while on supervision makes the trust breach significant.

According to the defense, a twelve-month sentence is appropriate because it ratchets upward from her last two revocation sentences. She has gone from bottom of the Guidelines to top of the Guidelines to above the Guidelines. The defense suggested that Defendant might not have understood that she was not allowed to go to Kentucky, but declined to argue that fact, as she stipulated to knowingly violating her no-travel condition. The defense observed that her blood test results were not available yet. If this matter was continued, the results could either exonerate her for DUI or potentially prompt Probation to adding a Grade B violation. Pleading guilty at this point removes either scenario. The defense also reported that Defendant says she is about nine weeks pregnant.

The defense mostly argued that Defendant is simple-minded and a follower. She has terrible judgment and terrible taste in men, who get her in trouble. Imprisonment and "the system" have not helped her; they have not prompted any change. Thus, the defense argued, a shorter imprisonment with no supervision is appropriate.

Defendant declined to address the Court.

## V.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the section 3583(e) analysis, as well as the Guidelines Range.

The Court first considers the nature and circumstances of Defendant's conviction. Defendant participated in a violent crime—a group of friends targeted an acquaintance for a brutal beating and potential murder on account of his sexual orientation. For this behavior, Defendant received a sentence of 100 months' imprisonment. This was a sizable downward

departure from Defendant's Guidelines Range of 188 to 235 months. Prior leniency like this can provide a basis for an upward departure. USSG § 7B1.4, note 4.

The Court next considers Defendant's history and characteristics and the need to deter criminal conduct and protect the public. Defendant was nineteen years old when sentenced and had already wrestled with addiction for years. This year, she will be turning 30. Defendant's drug use stemmed from the horrific loss of her mother, but drugs ended up taking the reins of her life. And Defendant can do violent things when on drugs. Defendant has demonstrated this propensity to hurt herself and others when she—again—fled from law enforcement and crashed her car. Defendant's lenient underlying sentence and her prior revocations have failed to change the course of her life or improve her behavior. In other words, the Court's tools appear ineffective in deterring Defendant's destructive conduct. Her drug use and associated erratic behavior pose a risk to the public, but she is mostly a danger to herself and her family and does not seem to pose a danger of kidnapping again.

Another factor is the need for additional training or treatment. During the 2019 revocation proceedings, the parties and the Probation Office arranged for Defendant to undergo inpatient treatment. But Defendant did not abide by the rules and was ejected from treatment. At this point, neither side expects treatment to work. The only hope is for Defendant to get serious about improving her life, but this can only come from within her.

The Guidelines suggest the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). The trust breach is serious here and warrants an

above-Guidelines sentence. This is Defendant's third revocation, and she has made no headway in getting away from drugs.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. Here, the Court recommends an incarceration sentence of 14 months. This is above the Guidelines Range of three to nine months. When varying from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

An above-Guidelines sentence is warranted here. This is Defendant's third revocation. She thwarted effective supervision by leaving her District of residence. She appears to have returned to drug use. And she again has wrecked her vehicle while fleeing law enforcement. Defendant is not effectively supervisable, and prior punishments did not provoke a more compliant attitude. Further, the Court agrees with the parties that additional supervision is unlikely to be effective and resources can be best directed elsewhere. Fourteen months is essentially the middle of her Guidelines Range times two. Perhaps, at last, a significant time in prison away from her family will provoke her to remake herself.

## VI. Conclusion

Based on the foregoing, the Court **RECOMMENDS:**

(1)   Based on her stipulation, that Defendant be found guilty of both Violations.

    (2)    Revocation with a sentence of fourteen months, with no more supervision to follow.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission. If Defendant chooses to waive allocution, then if possible she **SHALL** do so on or before the deadline for filing objections.

This the 21st day of June, 2022.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge