UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 6:12-CR-13-GFVT-HAI |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| MABLE ASHLEY JENKINS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

On referral from District Judge Van Tatenhove (D.E. 156), the Court considers reported violations of supervised release conditions by Defendant Mable Ashley Jenkins Minton. This is her fourth revocation.

## I.

District Judge Van Tatenhove entered an amended judgment against Defendant in July 2013 following a guilty plea to aiding and abetting kidnapping (18 U.S.C. §§ 2 and 1201(a)(1)) and aiding and abetting willful bodily injury because of sexual orientation (18 U.S.C. §§ 2 and 249(a)(2)). D.E. 72; *see also* D.E. 70 (Sentencing Memorandum Opinion). According to the plea agreement, Defendant helped lure a man so he could be beaten up by two other men because he was perceived to be homosexual. D.E. 64 at 2-3. Defendant was sentenced to 100 months of imprisonment followed by three years of supervised release, which included several special conditions. D.E. 72. Defendant began her first term of supervised release on September 16, 2019.

In September 2019, the United States Probation Office ("USPO") sought revocation for two violations. The USPO reported that, on September 18, 2019 (two days after her release),

Defendant submitted a urine sample that appeared to test positively for buprenorphine (Suboxone) via instant testing device. She denied use of buprenorphine. After the sample returned positive test results for a buprenorphine metabolite, Defendant again denied use of buprenorphine. Defendant was charged with violating the condition prohibiting controlled-substance use without a prescription and the condition prohibiting commission of a crime, here the Class-A misdemeanor of simple controlled-substance possession.

The USPO issued an addendum the following month, which charged a third violation. According to the addendum, on September 17, 2019, Defendant married Freddie Minton, a convicted felon who was on federal supervised release. This violated the condition that forbids Defendant from associating with any person convicted of a felony without the probation officer's permission.

At the final hearing on the three violations in the report and addendum, the parties announced a jointly recommended resolution: that the government intended to dismiss the first two violations, Defendant intended to admit the third violation (associating with a felon), and Defendant should be allowed to go immediately into inpatient drug treatment. The Court granted the request and ordered that Defendant "[e]nroll [in] and successfully complete an inpatient drug treatment at the USPO's choosing and direction." The final hearing was continued, to be reset following completion of the drug treatment program. D.E. 98. Defendant then entered inpatient treatment, but she did not complete the program.

In November 2019, the USPO issued a second report which charged a fourth violation, namely that Defendant had been discharged from the inpatient treatment program for failure to follow the rules. Defendant ultimately admitted all four violations. D.E. 105. She was

sentenced to seven months of incarceration plus 53 months of supervised release.  D.E. 109.
Defendant was released again on May 28, 2020.

On April 12, 2021, the USPO issued a report charging three violations.  Defendant had
submitted a urine specimen on April 7 that tested positive for marijuana and methamphetamine.
Defendant denied use of either substance.  But lab testing confirmed the presence of both.
Defendant was charged with unlawful use of a controlled substance, committing the crime of
marijuana possession, and committing the crime of methamphetamine possession.  *See* D.E. 122.

In an April 27 addendum, the USPO reported that, when the Marshals attempted to arrest
Defendant, she fled in her vehicle (with her husband Freddie Minton in the passenger seat).
Defendant crashed and was apprehended.  The addendum charged Defendant with committing a
crime—first-class fleeing or evading police.  *See* D.E. 122.

Defendant stipulated to the first three violations but entered an *Alford* plea to the fleeing-
and-evading charge.  *See* D.E. 122.  Her release was revoked with an imprisonment sentence of
twelve months, followed by a new 41-month term of supervised release.  D.E. 124, 125.
Defendant was released again on April 18, 2022.

On May 23, 2022, the USPO issued another report charging two violations.  First, the
USPO reported that on May 22, Defendant was arrested in Harlan, Kentucky, for various traffic
violations, plus the misdemeanors of not producing a driver's license and driving while under the
influence of a substance.  The Report was accompanied by Defendant's arrest citation and the
citation for Freddie Minton, who again was a passenger in Defendant's vehicle at the time of her
arrest.  According to the citation, Defendant's car was stopped for having no license plate.
Defendant appeared intoxicated and failed field sobriety tests.  She was taken to a hospital for
blood-alcohol testing.  This testing remained pending through the violation proceedings.

3

According to Mr. Minton's citation, when he got out of the car, a meth pipe fell out of his pocket. Police then searched the car, where they found methamphetamine and marijuana "in the back seat floor in between two juveniles." Mr. Minton was charged with first-degree meth possession, marijuana possession, and drug paraphernalia possession.

The report charged a Grade C violation of the condition prohibiting commission of a crime and a Grade C violation of the condition prohibiting Defendant from leaving her judicial district of supervision (she had traveled from East Tennessee to Harlan, Kentucky without permission).

Defendant stipulated to both violations. She also stated she was nine weeks pregnant. The parties agreed that no additional supervision should be imposed because Defendant was simply unsupervisable. The undersigned recommended revocation with fourteen months of imprisonment, with no additional supervision to follow. D.E. 134.

In June 2022, Judge Van Tatenhove adopted that recommendation. D.E. 136, 137.

The next month, however, Defendant filed a letter seeking early release. D.E. 138, 139. Her counsel then moved for relief, including early release with a condition that Defendant participate in the Hope City residential drug program (that accepts young mothers with infants). D.E. 140. Judge Van Tatenhove granted relief in part, entering an amended judgment with a recommendation to the BOP that Defendant participate in the MINT (Mothers and Infants Nurturing Together) program. D.E. 141, 142.

In January 2023, Defendant, through counsel, moved for compassionate release. D.E. 148. Judge Van Tatenhove ultimately granted that motion. D.E. 154, 155. Her sentence was

4

reduced to time served.[1]  And she was ordered to, after the birth of her child, go to a mother/child inpatient drug treatment facility.  She was also placed on supervised release, under her original conditions (plus a condition requiring compliance with the inpatient treatment program), for a term not to exceed her original sentence of incarceration.  *Id*.

Defendant was released from custody on January 30, 2023, following the birth of her child and was transported to the Independence House treatment facility.

## II.

On March 29, 2023, the USPO issued the Supervised Release Violation Report (the "Report") that initiated these proceedings.  The Report charges a single Grade C violation of the inpatient-treatment special condition.  According to the Report, "On March 27, 2023, the probation office was notified Jenkins would be terminated from the Independence House treatment program after making threats of harm to another resident."  Attached to the Report is Defendant's Discharge Summary.  According to the Discharge Summary, both staff and clients reported to the program director that Defendant was "making racial slurs . . . toward an African American Client" and had described the Newports she smoked as "Black People Cigarettes." Defendant is also said to have made threatening comments, such as "if I get in trouble, I won't be going to jail for a hate crime, I will be going to jail for murder."  Defendant is reported to have said that if she was made to leave, "she was going to punch a certain client in the face." According to the Discharge Summary, the director "had no choice but to discharge" Defendant "due to the nature of the allegations by several people," including "reports from staff and clients."

---

[1] The USPO calculates her time-served sentence as "approximately 7 months and 23 days," per the March 29, 2023 Report.

On April 11, 2023, the Court conducted an initial appearance on the Report pursuant to Rule 32.1.  D.E. 159.  Defendant competently, knowingly, voluntarily and intelligently waived her right to a preliminary hearing.  The government made an oral motion for interim detention, Defendant argued for release.  *Id*.  The Court found detention was appropriate because Defendant did not carry the heavy release burden imposed under Rule 32.1(a)(6) and 18 U.S.C. § 3143(a). *Id*.

The Court conducted a final hearing on May 1, 2023.  D.E. 160.  Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583.  *Id*.  Defendant competently entered a knowing, voluntary, and intelligent stipulation to the violation.  *Id*.  Although she denied using the n-word as alleged in the Discharge Summary, she admitted that she had been discharged from the treatment program on account of her own behavior.  For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for the violation as described in the Report (that she was terminated from the program "after making threats of harm to another resident"). The United States thus established the violation under the standard of section 3583(e).

### III.

The Court has evaluated the entire record, including the Report and accompanying documents, materials from the prior revocations, and documents related to the underlying conviction.  Additionally, the Court has considered all the 18 U.S.C. § 3583 factors imported into the 18 U.S.C. § 3583(e) analysis.

Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction.  Defendant's convictions are both Class A felonies.  *See* 18 U.S.C. §§ 1201(a)(1), 249(a)(2).  For a Class A felony, the

6

maximum revocation sentence provided under 18 U.S.C. § 3583 is five years (60 months) of imprisonment. *See* 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under U.S.S.G. § 7B1.1, Defendant's admitted conduct constitutes a Grade C violation. Given Defendant's criminal history category of I (the category at the time of Defendant's underlying conviction) and Grade C violation, Defendant's range, under the Revocation Table of Chapter 7, is three to nine months. *See* U.S.S.G. § 7B1.2(b).

A Court may also re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's original conviction carries a maximum term of supervised release of five years, minus any term of imprisonment imposed upon revocation. 18 U.S.C. § 3583(b). Subtracting Defendant's previous revocation terms, 33 months and seven days remains available, minus any imprisonment imposed upon this revocation.

## IV.

At the final hearing, the government requested an above-Guidelines revocation penalty of 18 months with no supervision to follow. The defense agreed that an above-Guidelines sentence would be appropriate, but asked for something less than 18 months. The defense agreed that Defendant ought not be placed back on supervision. The Court recommends revocation with twelve months of imprisonment (with no possibility for good-time credit), with no additional supervision.

The Court noted at the outset of the final hearing that, in his January 24 Order, Judge

Van Tatenhove considered the relevant sentencing factors. D.E. 154 at 8-11. Given the recency of this analysis, the Court considers it a baseline for the present calculations.

According to the government, the breach of trust in this case is "about as flagrant as it gets." This is Defendant's fourth revocation. Her 18-month sentence on last year's revocation was reduced to about eight months. Judge Van Tatenhove's grant of compassionate release was a "remarkably rare" gift. She was placed in treatment for the benefit of herself and her child. Yet, Defendant squandered these rare opportunities.

The government noted that the underlying conviction includes two Class A felonies, one of which is a hate crime that nearly resulted in the death of the victim. The government observed that the revocation behavior here also exhibited bigotry and threats of violence. The circumstances present a "sharp need to protect the public and an ongoing need for deterrence."

The defense observed that Defendant did receive two months of treatment and she had been engaged in treating her substance use disorder, which is a positive development. According to the defense, Defendant says she took a pregnancy test the Friday before the final hearing and it indicated she is pregnant. The defense reported that Defendant's two children are living with her husband, her father, and her sister in Kingsport, Tennessee. The defense believes the Probation Office in the Eastern District of Tennessee would be unwilling to supervise Defendant again. The defense asked for a recommendation that Defendant be placed at FMC Lexington due to her health concerns, which include, among other things, preeclampsia, seizures, and pregnancy. The defense also asked that Defendant not be returned to FCI Aliceville due to threats that were made to her there. The Court informed Defendant that she should alert the BOP to these threats when given the opportunity.

Defendant declined to address the Court.

8

# V.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the section 3583(e) analysis, as well as the Guidelines Range.

The Court first considers the nature and circumstances of Defendant's conviction. Defendant participated in a violent crime—a group of friends targeted an acquaintance for a brutal beating and potential murder on account of his sexual orientation.  For this behavior, Defendant received a sentence of 100 months' imprisonment.  This was a sizable downward departure from Defendant's Guidelines Range of 188 to 235 months.  Prior leniency like this can provide a basis for an upward departure.  USSG § 7B1.4, note 4.  A troubling aspect of the current violation is that it involved bigotry and threats of violence.  This suggests Defendant has failed to make positive changes in attitude over the past ten years of being in and out of jails, prisons, and treatment programs.

The Court next considers Defendant's history and characteristics and the need to deter criminal conduct and protect the public.  Defendant was nineteen years old when sentenced and had already wrestled with addiction for years.  She is now thirty.  Judge Van Tatenhove recently opined that Defendant "inevitably returns to drugs" when given the chance.  D.E. 154 at 9.  She was recently given early release and placement in a treatment program, but her behavior led to her early discharge.  This is her fourth revocation.  As last time, both sides believe she is not amenable to effective supervision and further supervision would be a poor use of resources.  As Judge Van Tatenhove recently noted, Defendant's last revocation involved a car crash while fleeing from police, which exemplifies the potential danger she poses to herself and others. *Id*. at 8.

9

Another factor is the need for additional training or treatment. Defendant has now been twice ejected from Court-provided addiction treatment programs. The only hope is for Defendant to get serious about improving her life, but this can only come from within her.

The Guidelines suggest the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). The trust breach is serious here and warrants an above-Guidelines sentence. This is Defendant's fourth revocation, and she has continued to disregard her terms of supervision.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. Here, the Court recommends an incarceration sentence of twelve months. This is above the Guidelines Range of three to nine months. When varying from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

An above-Guidelines sentence is warranted here. This is Defendant's fourth revocation. She has a history of thwarting supervision. She was recently shown leniency by being granted early release and placed in a treatment program where she can be with her baby. Yet, while there she made threats of violence. Even the defense agreed an above-Guidelines sentence is

10

appropriate.  The best the Court can do at this point is to provide protection to the public and specific deterrence to Defendant with a significant term of imprisonment.

## VI.  Conclusion

Based on the foregoing, the Court **RECOMMENDS:**

(1)    Based on her stipulation, that Defendant be found guilty of Violation #1.

(2)    Revocation with a sentence of twelve months with no more supervision to follow.

(3)    That the BOP evaluate Defendant for the MINT program should she be pregnant.

(4)    That the BOP place Defendant in a facility adequate to treat her medical needs, including her potential pregnancy.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i).  As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission.  If Defendant chooses to waive allocution, then if possible she **SHALL** do so on or before the deadline for filing objections.

This the 2nd day of May, 2023.



**Signed By:**

*Hanly A. Ingram*

**United States Magistrate Judge**